MARY WHITNEY ET AL., APPELLANTS, v. OTTO COMBE ET AL., APPELLEES.

37 N. W. 2d 613

Filed May 19, 1949. No. 32602.

*D. E. Owens,* for appellants.

*Ross D. Druliner, Jr.,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Mary Whitney, George Donaldson, and Dorothy Donaldson brought this action in the district court for Dundy County against Maria Combe, Otto Combe, Mabel Combe, George Combe, and Esther Combe. The purpose of the action is to have the court quiet in them the title to Lot 11 in Block 40 in the Second Addition to Benkelman, Nebraska. The trial court found generally for the defendants and dismissed the plaintiffs' petition. Their motion for new trial having been overruled, the plaintiffs appealed.

The record discloses the following factual situation: Maria Combe, a widow whose husband Charles had died about 1909, was, during the time here material, the owner of Lot 11 in Block 40 in the Second Addition to Benkelman and occupied it as her home. The property is a

small residence property and apparently of no great value, although no evidence was offered as to its actual worth. It appears that it was in a poor state of repair.

At the time of her husband's death the family lived on a farm near Benkelman. In addition to the parents the family consisted of three children. They were Johanna, a daughter, then the age of 20 or 21 years; Otto, a son, then the age of 16 years; and George, a son, then the age of 11 years.

About 1911 Johanna moved to Denver. She subsequently married and her name became Johanna Donaldson. To this marriage three children were born who are the appellants here. They constitute all her heirs as Johanna's husband had previously departed this life.

After the father's death the widow, with her two sons, stayed on the farm. She continued to operate it until 1929. In 1930 the mother moved to Benkelman. Thereafter each of the sons occupied a separate part of the farm and paid the mother rent for the use thereof. This continued until 1942. In that year the mother deeded to each of the sons the farm he was then occupying. This was done pursuant to an oral agreement she had with each of them and was their compensation for the services they had rendered her by staying home and helping farm the land. Subsequently the sons sold these farms and each received about $5,000 from the sale thereof.

Otto is married and the appellee Mabel Combe is his wife. George is also married and the appellee Esther Combe is his wife.

In 1945 Maria Combe, then being of advanced years and in poor health, induced her daughter to come to Benkelman from Denver to take care of her. The daughter had lived in Denver ever since going there in 1911. On August 2, 1945, the mother and daughter entered into an agreement with reference to the property herein involved. It is as follows:

"THIS AGREEMENT Made and entered into this 2nd day of August, A. D. 1945, by and between Maria Combe,

party of the first part and Johanna Donaldson, party of the second part:

"WITNESSETH That whereas party of the first part is not in good health, and is in need of someone to stay with her, and party of the second part has agreed to take care of and stay with said party of the first part, in consideration of the covenants and agreements of the party of the second part hereinafter set forth, party of the first part hereby agrees to and hereby does convey to party of the second part the dwelling and household goods located therein and all of Lot Numbered Eleven (11), in Block Numbered Forty (40), in the Second Addition to Benkelman, Dundy county, Nebraska, said deed of conveyance and bill of sale being delivered this date.

"IN CONSIDERATION of the covenants and agreements of the party of the first part hereinbefore set forth party of the second part agrees to give party of the first part physical care and stay with her as long as she lives, and agrees not to sell or mortgage any of said property during the lifetime of said party of the first part.

"THIS AGREEMENT shall be binding upon the heirs, executors administrators and assigns of the parties hereto."

On the same day and as part of the same transaction the deed and bill of sale referred to in the agreement were made and executed. The bill of sale covered the household goods in the home. All these instruments were then placed in the safety deposit box of Maria Combe which was in the State Bank which is located in Benkelman. It should here be stated that Johanna Donaldson, by permission and direction of her mother, had, on various occasions while she lived with and was taking care of her mother, had access to and possession of this safety deposit box.

On the same day this agreement was made the daughter came into the home of her mother to stay and care for her. This she continued to do until in November 1946 when, due to illness, she was taken to a hospital in

Denver. She remained there until in January 1947. During her absence Dorothy Donaldson, one of the appellants and Johanna's daughter, took care of her grandmother and the home. Upon Johanna's return in January 1947, she again took up the care of her mother and continued to care for her until shortly before she, Johanna, died. Johanna died on July 17, 1947.

After her mother died Dorothy stayed in the home for a few weeks and offered to stay and take care of her grandmother. She was at that time employed by an implement company in Benkelman. Her offer was not accepted because it was thought an older person would be more desirable. As a consequence Alda Bennett was employed. She took care of Maria Combe and the home and was paid therefor by Maria Combe at the rate of $20 a week.

On September 4, 1947, the mother asked her two sons, Otto and George, to get the three papers, that is, the deed, the bill of sale, and the agreement, out of her safety deposit box in the bank and take them to her attorney, R. D. Druliner, to have them canceled. Otto and George got the papers out of the safety deposit box and took them to the office of Druliner, her attorney. Druliner wrote across these papers the following: "Cancelled on account of the death of Johanna Donaldson July 17th, 1947 Maria Combe by R. D. Druliner." At the same time and pursuant to the direction of their mother the sons had Druliner prepare a deed. This deed covered this property and was to the two sons. They, the two sons and Druliner, then went to the mother's home. There she executed the deed before Druliner, who appears to have been a notary, and gave the deed to her sons with directions that they have it recorded. This they did on the same day. There was an agreement between the sons and their mother relating to the consideration for this deed but evidence relating thereto was excluded.

In November 1947 the mother was taken to the hospital. She remained there until her death on April

25, 1948. In the meantime appellants had started this action on December 26, 1947. An amended petition, on which the case was heard, was filed on August 21, 1948.

In holding that Johanna Donaldson obtained no interest in the property by reason of the deed the trial court found: "* * * that the deed given to plaintiffs' ancestor, Johanna Donaldson was made simultaneously with a certain written agreement between Maria Combe and Johanna Donaldson, that said instruments constitute one agreement, that in said written agreement Johanna Donaldson agreed to take care òf Marie Combe as long as she lives, that Johanna Donaldson died before Maria Combe and by reason of said death, there was a failure of consideration of the deed given by Maria Combe to Johanna Donaldson and Johanna Donaldson obtained no interest in the property involved herein by virtue of said deed."

There is no question but that the deed, bill of sale, and agreement are all part of the same transaction and that the consideration for the deed and bill of sale was that Johanna Donaldson would personally stay with and care for Maria Combe, her mother, as long as her mother should live. Unfortunately, due to Johanna's death, this was not possible.

The question presented is, what effect did the death of Johanna Donaldson before Maria Combe's have, that is, did it cause such a failure of consideration of the deed that the grantee named therein obtained no interest in the property by reason thereof?

With reference to the nature of such an agreement we have said: "Distinction exists as between an ordinary commercial contract and a contract of the kind here considered. Contracts of the latter class are in a' different classification and not subject to the ordinary rules applied by courts in other cases. Anderson v. Reed, 20 N. M. 202, 148 Pac. 502, L. R. A. 1916B, 862." Copass v. Wilborn, 139 Neb. 124, 296 N. W. 565. Therein this court went on to say: "This and other courts have canceled

such contracts without stating any particular grounds for so doing. Tomsik v. Tomsik, 78 Neb. 103, 110 N. W. 674; Humbles v. Harris, 151 Ky. 685, 152 S. W. 797; Peck v. Hoyt, 39 Conn. 9."

What we held in Lewelling v. McElroy, 148 Neb. 309, 27 N. W. 2d 268, is here applicable. There we held: "The promise here was personal. While the death of the grantee would not constitute a willful violation of the promise, it nevertheless resulted in a failure to perform the promise and a failure of the consideration so far as the grantor was concerned, for which an equity court should grant relief."

And as stated in Bishop v. Aldrich, 48 Wis. 619, 4 N. W. 775: "The consideration for the conveyance has failed, and, under the circumstances peculiar to cases of this class, the conveyance ought to fail with it."

Where relief is given by setting aside or canceling a deed the consideration for which was an agreement by the grantee to individually care for the grantor, because full performance has been prevented by the death of the grantee, the court may impose such conditions as the equities of the case justify. See Tomsik v. Tomsik, 78 Neb. 103, 110 N. W. 674, and Lewelling v. McElroy, *supra*. Under the circumstances here should any conditions have been imposed?

The daughter was in the home from August 2, 1945, until July 17, 1947, or less than two years and, of this time, she spent about three months in the hospital. It appears she received $20 a month for these services besides her board and room. It also appears that Johanna's daughter stayed with her during this time. There is testimony that she spent these and other funds she had in fixing up the home, however, the testimony is not sufficiently definite to establish the amount so spent nor does it show anything in particular that any definite amount was spent for. In view thereof, we do not think the record sufficient nor the equities such as to require any

conditions to be imposed upon the appellees to entitle them to the relief granted.

For the reasons stated the decree of the trial court is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.